**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | | |
|---|---|---|
| AFFINITY LABS OF TEXAS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:12-cv-00580-RC |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| FORD MOTOR COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| AFFINITY LABS OF TEXAS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:12-cv-00582-RC |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| GENERAL MOTORS, LLC, | ) | |
| | ) | |
| Defendant. | | |

**AFFINITY LABS' MOTION TO STRIKE PORTIONS OF EXPERT REPORT OF**
**SCOTT ANDREWS REGARDING INVALIDITY**

84816197.1

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

RELEVANT BACKGROUND ............................................................................................. 2

I.    Andrews employs a definition of a PHOSITA that requires higher level of skill in
      the art than that to which the parties agreed ................................................................ 4

II.   Andrews' § 103 analysis omits relevant indicia of non-obviousness .............................. 5

III.  Andrews' § 112 enablement analysis lacks any consideration of requisite factors ........... 6

ARGUMENT ....................................................................................................................... 7

I.    Andrews' validity analyses under 35 U.S.C. §§ 102(a), 103, and 112 are
      unreliable because he failed to apply the proper definition of one of ordinary skill
      in the art ................................................................................................................... 8

II.   Andrews' obviousness analyses fails to consider objective indicia of non-
      obviousness, of which he and Defendants were aware .................................................. 10

III.  Andrews' validity analysis under 35 U.S.C. § 112 is based on an erroneous
      understanding and application of the law ..................................................................... 11

CONCLUSION .................................................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**

*Amgen Inc. v. Chugai Pharm. Co.*,
  927 F.2d 1200 (Fed. Cir. 1991)..........................................................................12

*Ariad Pharms., Inc. v. Eli Lilly and Co.*,
  598 F.3d 1336 (Fed. Cir. 2011)........................................................................9, 11

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993).................................................................................... 1, 7, 13

*Glaxo Inc. v. Novopharm Ltd.*,
  52 F.3d 1043 (Fed. Cir. 1995)..............................................................................8

*Graham v. John Deere Co.*,
  383 U.S. 1 (1966)...........................................................................................5, 10

*In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*,
  676 F.3d 1063 (Fed. Cir. 2012)...........................................................................10

*In re Paoli R.R. Yard PCB Litig.*,
  35 F.3d 717 (3d Cir. 1994).....................................................................................7

*In re Wands*,
  858 F.2d 731 (Fed. Cir.1988).........................................................................12, 13

*KSR Int'l Co. v. Teleflex, Inc.*,
  550 U.S. 398 (2007)..............................................................................................10

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999)................................................................................................7

*Martek Biosciences Corp. v. Nutrinova, Inc.*,
  579 F.3d 1363 (Fed. Cir. 2009)...........................................................................12

*Mintz v. Dietz and Watson, Inc.*,
  679 F.3d 1372 (Fed. Cir. 2012)...........................................................................10

*Streck, Inc.v. Research & Diagnostic Sys., Inc.*,
  665 F.3d 1269 (Fed. Cir. 2012).....................................................................9, 11, 12

*United States v. Valencia*,
  600 F.3d 389 (5th Cir. 2010) ................................................................................8

**Statutes**

35 U.S.C. § 102(a) ................................................................................................ 4, 8

35 U.S.C. § 103................................................................................................ 4, 5, 8, 11

35 U.S.C. § 112............................................................................................ 4, 6, 8, 11, 12

**Rules**

Federal Rule of Evidence 702............................................................................. 1, 7, 13

## <u>INTRODUCTION</u>

Affinity Labs moves pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579 (1993), for an order limiting the testimony of Defendants' invalidity expert, Scott Andrews.[1] While Defendants rely on Mr. Andrew's opinion that the patents-in-suit are invalid, his opinions should be stricken for three reasons.

First, Mr. Andrews adopts a level of ordinary skill in the art that is markedly different than that adopted by the Court, and explicitly accepted by all parties, during the *Markman* hearing. Mr. Andrews' analysis omits an entire engineering field and other professional experience that is highly relevant to the subject matter at issue. Indeed, the level of ordinary skill employed by Mr. Andrews both narrows and raises the level of skill in the art, which makes his methodology flawed and his conclusions unreliable regarding all of his invalidity opinions, and especially his obviousness opinion.

Second, Mr. Andrews' opinion regarding whether the patents-in-suit are obvious—which they are not—is irreparably flawed because Mr. Andrews completely failed to take into account secondary indicia of non-obviousness, which must be assessed when present. Mr. Andrews, who testified on obviousness at the prior trial in this Court, knew about the secondary considerations relied upon by Affinity both then and now, and Defendants' lawyers knew as well.  And yet, Mr. Andrews failed to say a single thing about those secondary considerations in his report.

---

[1] Mr. Andrews was retained by both General Motors LLC ("GM") and Ford Motor Company ("Ford") to provide his opinion regarding invalidity of the patents-in-suit (Ex. C at 1) in *Affinity Labs of Texas LLC v. General Motors LLC* (No. 1:12-cv-582) and *Affinity Labs of Texas LLC v. General Motors LLC* (No. 1:12-cv-00580). Accordingly, Defendants GM and Ford are referred to collectively herein as "Defendants."

Finally, Mr. Andrews' opinion on enablement of the patents-in-suit should also be stricken because he was not instructed on the legal standard, did not know it at his deposition, and did not apply it in his analysis.

## RELEVANT BACKGROUND

In this suit, Affinity Labs alleges that Defendants' automobile audio systems infringe U.S. Patent Nos. 7,324,833 ("the '833 patent") and 7,634,228 ("the '228 patent") (collectively, the "patents-in-suit"), which were subject to previous litigation before this Court. *See Affinity Labs of Tex., LLC v. BMW N. Am., LLC*, 9-08-cv-164, Doc. # 326 (construing the '833 patent), Doc. # 386 (construing the '228 patent) (hereinafter "*Affinity v. BMW*").

In that case, a jury applied this Court's claim constructions and agreed with Affinity Labs that the patents-in-suit were valid and infringed. Mr. Andrews was retained by defendants in that case and testified at trial regarding the validity of the patents-in-suit, applying the definition of a person of skill in the art ("PHOSITA") adopted by the Court in this case. (*See* Ex. A, Tr. at 596-97, 2647.) [2]

On January 10, 2014, the Court conducted a *Markman* hearing regarding the meaning of disputed claim terms in this action. The parties did not propose a new definition of a PHOSITA, but instead applied the same definition that was used during the jury trial. (*GM* Doc. # 64, Ex. 4 at 6-7; *Ford* Doc. # 55, Ex. 4 at 6-7; *GM* Doc. # 69, Ex. D at 6-7; *Ford* Doc. # 58, Ex. D at 6-7.) [3] Accordingly, in view of the parties' positions during the *Markman* process, and "[b]ased on the teachings described in the patents, the references cited as examined by the PTO examiners, the

---

[2] Exhibits are attached to the Declaration of Cyrus A. Morton submitted herewith.

[3] Citations to "*GM* Doc. # ___" refer to docket entries in *Affinity Labs of Texas LLC v. General Motors LLC* (No. 1:12-cv-582) (E.D. Tex.). Citations to "*Ford* Doc. # ___" refer to docket entries in *Affinity Labs of Texas LLC v. General Motors LLC* (No. 1:12-cv-00580) (E.D. Tex.).

testimony of witnesses at prior *Markman* hearings, and a trial involving [the patents-in-suit]," the

Court proposed the following:

> [A]n individual with the equivalent of a four-year degree from an accredited
> institution (usually denoted in this country as a B.S. or Bachelor's degree) in
> Electrical Engineering (EE), Mechanical Engineering (ME), or Computer
> Science (CS, with at least two semesters of coursework in EE and/or ME),
> together with at least two years of experience working with, developing, or
> designing electronic devices with user interfaces. Advanced education in EE,
> ME, or CS might substitute for some of the experience, while extensive
> experience in working with, developing, or designing electronic devices with
> user interfaces might substitute for some of the educational requirements.

(Ex. B, Tr. at 12.)

All parties at the *Markman* hearing explicitly adopted the Court's proposed definition of

a PHOSITA:

> **The Court:** Any objections from Affinity as to the definition I have here on Court
> 1 on the "person of ordinary skill in the art"?
> **Mr. Morton**: No objection, your Honor.
> …
> **The Court:** All right. What about Ford? Any objection to this definition of
> "person of ordinary skill in the art"? If you speak up loudly, you can just --
> **Mr. Leroy**: No objection, your Honor.
> **The Court**: Okay. What about General Motors?
> **Mr. Beaber**: No objection, your Honor.
> **The Court**: And the cell phone group?
> **Mr. Heartfield**: Your Honor, the cell phone defendants do not object to Court
> Number 1.
> **The Court**: Okay. All right. So, that will be our "person of ordinary skill in the
> art."

(Ex. B, Tr. at 12-13.)

Indeed, Defendants waived any opportunity to offer a competing definition by failing to

bring their technical experts to the *Markman* hearing. (Ex. B, Tr. at 11-12.)

The PHOSITA definition was then used by the Court for the purposes of the claim

constructions, (*see GM* Doc. # 107 at 5-6; *Ford* Doc. # 91 at 5-6), on which the jury in this case

will be instructed.

Subsequently, Defendants served a report on the validity of the patents-in-suit by Scott

Andrews, whom they had jointly retained, on April 10, 2014.

**I.      Andrews employs a definition of a PHOSITA that requires higher level of skill in the art than that to which the parties agreed.**

The Andrews Report adopts a significantly narrowed definition of a PHOSITA. (Ex. C at

13-14.) As compared to the Court's definition, Mr. Andrews' definition makes the following

changes, as seen in bold:

> [A]n individual with the equivalent of a four-year degree from an accredited institution (usually denoted in this country as a B.S. or Bachelor's degree) in Electrical Engineering (EE), ~~Mechanical Engineering (ME),~~ or Computer Science ~~(CS,~~ with at least two semesters of coursework in EE ~~and/or ME),~~ together with at least two years of experience working with, developing, or designing electronic devices with **graphical** user interfaces **and communications features**. Advanced education in EE, ~~ME~~, or CS might substitute for some of the experience, while extensive experience in ~~working with~~, developing, or designing electronic devices **of this type** ~~with user interfaces~~ might substitute for some of the educational requirements.

These deviations from the definition adopted by the Court and accepted by the

parties are significant. They omit the entire field of mechanical engineering as well as

those individuals with experience "working with" electronic devices. Mr. Andrews'

definition further omits any individual who may have experience with electronic devices

having user interfaces. Instead, Mr. Andrews adds the requirement that an individual's

experience include "working with, developing, or designing electronic devices with

*graphical* user interfaces *and communications features.*" The cumulative result of these

alterations is a skill in the art that is significantly higher than that adopted by the Court,

and previously agreed to by the Defendants.

Mr. Andrews employs this definition in his validity analyses under 35 U.S.C. §§

102(a), 103, and 112, reaching the ultimate conclusion that the patents-in-suit are invalid.

(Ex. C at 3-9.)  When questioned about his departure from the Court's definition of a

PHOSITA, Mr. Andrews explained the need for higher skill in the art:

> I think that a person with electrical engineering or computer science alone
> would be sufficiently capable of implementing -- or understanding the patent
> and implementing the invention. And as I said, I think that a person with only
> mechanical engineering skills would not be able to implement all of the
> aspects of the invention.
>
> ….
>
> I think that you would need to have a higher -- a broader level of experience than
> just designing devices with user interfaces.

(Ex. D, Tr. at 199:18-24, 204:1-3.)  Mr. Andrews' deposition testimony offers little

insight into his rationale for departing from the accepted definition of a PHOSITA, but is

more illuminating than his expert report, which is devoid of any explanation whatsoever.

(*See* Ex. C at 13.)

## II.  Andrews' § 103 analysis omits relevant indicia of non-obviousness.

In assessing obviousness under 35 U.S.C. § 103, Mr. Andrews claimed to have examined

whether "the differences between the claimed invention and the prior art would have been

obvious, at the time the invention was made, to 'a person having ordinary skill' to which the

claimed invention pertains." (Ex. C at 10.)  He was aware that the Supreme Court's decision in

*Graham v. John Deere Co.*, 383 U.S. 1 (1966), requires an analysis of multiple factors, including

"'[o]bjective' considerations, such as commercial success and praise of the alleged invention . . .

."  (*Id.*)

More than a month before the Andrews Report was served, Affinity Labs provided an

interrogatory response with extensive detail regarding relevant indicia of non-obviousness. (Ex.

E.) Affinity Labs' evidence included expert testimony about long-felt and unresolved need,

commercial success, unexpected results, failure of others, and licenses and agreements for the

claimed technology.  Affinity Labs cited the amount of research into methods for bringing digital

media into the automobile that did *not* yield the invention.  Further, Affinity Labs provided

evidence exhibiting the belief of the industry four years *after* the invention that the BMW-iPod

interface for providing basic control of a portable digital audio player from a car head unit in

2004 was inventive and a huge commercial success.

Among the myriad of relevant evidence, Affinity Labs specifically cited to the following:

- Declaration of Russell W. White in the *inter partes* reexamination, Reexamination Control No. 95/001,262, including all exhibits thereto;

- The trial and post-trial transcripts from *Affinity Labs v. BMW*, wherein overwhelming evidence concerning secondary considerations was presented to the jury and summarized in the Court's order denying defendants' motion for JMOL.

- Agreements regarding the patents-in-suit.

All of these materials were produced by Affinity Labs in this litigation.[4] Most if not all of

it is in Mr. McAlexander's report, again, in these cases. (*See* Ex. F.) Yet, Mr. Andrews failed to

address *any* objective indicia of non-obviousness.[5]

## III.   Andrews' § 112 enablement analysis lacks any consideration of requisite factors.

Mr. Andrews' report contains only cursory reference to the legal standard for proving

enablement. When asked at his deposition to clarify the standard he applied to his analysis, he

explained:

I examined the patent specification and the claims as -- from the perspective
of one skilled in the art at the time of patent filing, and I looked to see if the

---

[4] Affinity Labs has produced all of its agreements with third parties except for three agreements
with third parties from whom it does not yet have permission to produce the agreements.

[5] Furthermore, during his deposition in this case, Mr. Andrews confirmed that he reviewed
Affinity Labs' rebuttal expert report regarding validity in the *Affinity v. BMW* case, a report
which contained extensive analysis relevant of indicia of non-obviousness. (Ex. D at 60.)

subject matter of the claims was described in such a way that it was clear that the inventors were in possession of the claimed invention.

(Ex. D, Tr. at 194:12-17.)

When questioned further regarding his enablement analysis, he explained:

**Q**. Okay. And do you know what the test is or what you need to apply to examine whether or not it would take undue experimentation to practice the claims based on the specification?
**A**: I think if it's -- I think it's sort of self-evident. If you would have to perform analyses or build prototypes and try kind of by trial and error different ways of approaching the problem in order to implement the invention, then it wouldn't be enabled essentially.
**Q**. Okay. And is that the test that you applied for enablement in this case?
**A**: In a nutshell, yes.

(Ex. D, Tr. at 196:6-21.)

## ARGUMENT

Expert testimony is admissible only if such testimony will assist the trier of fact and if  "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 588 (1993). Thus, in a *Daubert* inquiry, the district court acts as the gatekeeper to ensure the expert is properly qualified to give the testimony and that the proposed expert testimony is both reliable and relevant. 509 U.S. at 589-90. "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue."  *Id*. at 592-93. "[A]ny step that renders the analysis unreliable . . . renders the expert's testimony inadmissible."  *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994).

District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) ("the trial judge

must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

**I.      Andrews' validity analyses under 35 U.S.C. §§ 102(a), 103, and 112 are unreliable because he failed to apply the proper definition of one of ordinary skill in the art.**

Ford and GM are estopped from arguing for a different level of skill in the art.  Similarly, they cannot rely on an expert who uses a different definition.  And Mr. Andrews' opinions, which he admitted were all based upon his different level of skill in the art (Ex. C at 3-9) are unreliable. His methodology is flawed for all of his invalidity opinions.

A § 103 obviousness inquiry depends upon the perspective of a PHOSITA. The focus of the obviousness inquiry is whether the subject matter of the invention as a whole would have been obvious to a person of ordinary skill in the art to which the subject matter pertains at the time of the invention. 35 U.S.C. § 103.

A § 102(a) analysis (anticipation) likewise requires examination from the perspective of a PHOSITA. "An anticipating reference must describe the patented subject matter with sufficient clarity and detail to establish that the subject matter existed in the prior art and that such existence was recognized by persons of ordinary skill in the field of the invention." *Glaxo Inc. v. Novopharm Ltd.*, 52 F.3d 1043, 1047 (Fed. Cir. 1995).

Finally, both the enablement and written description requirements demand objective inquiry from the perspective of a PHOSITA. *See Streck, Inc. v. Research & Diagnostic Sys., Inc.*,

665 F.3d 1269, 1288 (Fed. Cir. 2012); *Ariad Pharms., Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2011).

As the Court noted at the January 10, 2014 *Markman* hearing, its definition of a PHOSITA was adopted from a previous jury trial involving exactly the same patents-in-suit. Every party at the *Markman* hearing—including GM and Ford—explicitly adopted this definition. (Ex. B, Tr. at 12-13.) Indeed, the Court systematically asked each party whether or not they objected to the Court's proposed definition, and there was not a single objection. (*Id.*) The Court proceeded to construe the disputed claim terms based upon an agreed-upon definition of a PHOSITA, which had already been applied by Affinity Labs' expert—*and by Mr. Andrews*—during a prior jury trial, for the same patents-in-suit.

Now, Defendants attempt to introduce a second, distinctly different definition of a PHOSITA through Mr. Andrews, which they should be foreclosed from doing.

Mr. Andrews' adoption of a different definition of a PHOSITA raises numerous concerns. The restrictive definition dramatically narrows the field of individuals considered in his analysis. For instance, Mr. Andrews' definition prevents him from considering how an individual with the requisite mechanical engineering background would view the specifications of the patents-in-suit or the differences between the claimed inventions and the prior art. Similarly, Mr. Andrews' definition omits any individual who does not have experience with "wireless communications features." This alternative (and incorrect) definition of a PHOSITA allows Mr. Andrews to fit his analysis to his desired conclusions, but those conclusions are now unreliable and cannot be helpful to a jury.

Mr. Andrews' new definition is perhaps most concerning with respect to obviousness. By requiring a different and higher level of skill in the art, Mr. Andrews tilts the analysis in favor of

finding obviousness because inventions are more likely to be obvious to a person of higher skill. Defendants cannot now attempt to benefit from such a manufactured advantage after agreeing to a lower level of skill at the *Markman* hearing.

In light of the above, Mr. Andrews' opinions are based upon a flawed methodology and he should not be permitted to give them at trial.

## II. Andrews' obviousness analysis fails to consider objective indicia of non-obviousness, of which he and Defendants were aware.

In considering the issue of obviousness, a fact finder must engage in an objective analysis informed by several factors, including (1) the scope and content of the prior art; (2) the differences between the prior art and the claimed invention; (3) the level of ordinary skill in the art; and (4) secondary considerations, such as commercial success, long felt but unmet need, failure of others, and unexpected results. *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966); *see also KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 399 (2007) ("While the sequence of [these factors] might be reordered in any particular case, [they] continue to define the inquiry that controls."); *Mintz v. Dietz and Watson, Inc.*, 679 F.3d 1372, 1375-76 (Fed. Cir. 2012). So-called "secondary considerations" *may not be omitted* from this analysis. Indeed, "[t]he objective considerations, when considered with the balance of the obviousness evidence in the record, guard as a check against hindsight bias." *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1079 (Fed. Cir. 2012).

Here, Mr. Andrews entirely omits "secondary considerations" from his obviousness analysis, noting that "'[o]bjective considerations,' such as commercial success and praise of the alleged invention, *may* also be considered in the obviousness analysis."  (Ex. C  at 10 (emphasis added).) This misstatement of law is telling, Defendants apparently instructed Mr. Andrews that he only "may" consider two secondary considerations, which he did not.  They should have

instructed him that he *must* consider any of the full list of factors when present, which he also did not.

The failure in Mr. Andrews' analysis is glaring in light of his clear knowledge of secondary indicia, and Affinity's disclosure of that knowledge to Defendants. Mr. Andrews read Mr. McAlexander's report in the last case, and sat through all of the trial testimony relied upon by Mr. McAlexander again in this case.  (*See* Ex. F.) The trial transcripts and exhibits were produced in the present cases. Affinity Labs pointed to all of that information in response to an interrogatory. Yet, Mr. Andrews made not even a passing reference to any of that information in his analysis. Having addressed none of the secondary considerations relied upon by Affinity's expert Mr. McAlexander in both cases, Mr. Andrews is at great risk of applying hindsight bias. This is the very reason why the Supreme Court and the Federal Circuit have required an analysis of secondary considerations as a predicate to providing an opinion on obviousness.  As such, Mr. Andrews' validity analysis under § 103 is unreliable and should be stricken.

## III.   Andrews' validity analysis under 35 U.S.C. § 112 is based on an erroneous understanding and application of the law.

Mr. Andrews' report does not contain the legal standard for addressing enablement, he did not know what it was at his deposition, and he did not apply it in his analysis.  Defendants should not be permitted to rely on his analysis of enablement.

The written description requirement is separate and distinct from the enablement requirement. *See Ariad Pharms.*, 598 F.3d at 1344 (Fed. Cir. 2010) ("We . . . hold that § 112, first paragraph, contains two separate and description requirements: a written description [i] of the invention, and [ii] of the manner and process of making and using the invention."). "The enablement requirement is met where one skilled in the art, having read the specification, could practice the invention without 'undue experimentation.'" *Streck*, 665 F.3d at 1288 (Fed. Cir.

2012). "Whether undue experimentation is needed is not a single, simple factual determination, but rather is a conclusion reached by weighing many factual considerations." *Martek Biosciences Corp. v. Nutrinova, Inc*., 579 F.3d 1363, 1378 (Fed. Cir. 2009) (citing *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988)).

The Federal Circuit has provided several factors that may be utilized in determining whether a disclosure would require undue experimentation: (1) the quantity of experimentation necessary; (2) the amount of direction or guidance disclosed in the patent; (3) the presence or absence of working examples in the patent; (4) the nature of the invention; (5) the state of the prior art; (6) the relative skill of those in the art; (7) the predictability of the art; and (8) the breadth of the claims. *In re Wands*, 858 F.2d at 737. These factors are sometimes referred to as the "*Wands* factors." While a fact finder need not consider every one of the *Wands* factors in his or her analysis, a fact finder is required to consider those factors relevant to the facts of the case. *See Streck, Inc*., 665 F.3d at 1288 (citing *Amgen Inc. v. Chugai Pharm. Co.*, 927 F.2d 1200, 1213 (Fed. Cir. 1991)).

Here, Mr. Andrews' enablement analysis is fatally flawed. First, Mr. Andrews was apparently not instructed regarding the legal standards for enablement, and he could not explain them at his deposition. (*See* Ex. C at 12; Ex. D at 194:12-17.) In his report, Mr. Andrews states that he understands "that the requirements of [§ 112] are commonly called the written description and enablement requirement," but identifies no additional standard for evaluating whether a patent is enabled. (Ex. C at 12.) Second, Mr. Andrews fails to consider whether one skilled in the art, having read the specification, could practice the invention without "undue experimentation."

What little analysis Mr. Andrews offers on this point is entirely conclusory. For instance, regarding the elements of claim 28 of the '833 patent, Mr. Andrews states that "the conventional

CD player line, at the time of the '947 patent application filing, was clearly unable to support the required communications, *at least not without substantial experimentation, development, and modification, none of which is described or enabled . . . ."* (Ex. C at 115 (emphasis added).) He provides no additional analysis on this point.

Moreover, it is clear from his testimony in this case that Mr. Andrews lacks the requisite understanding of what "undue experimentation" means, (*see* Ex. D, Tr. at 196:6-21), so cannot properly have conducted an enablement analysis at all. Mr. Andrews does not consider any of the *Wands* factors at any point in his report, nor indicate his reason for not doing so. Accordingly, his enablement opinion should be stricken.

## **<u>CONCLUSION</u>**

For the foregoing reasons, Affinity respectfully requests that this Court strike those portions of the Expert Report of Scott Andrews Regarding Invalidity that fail to meet the requirements of Fed. R. Evid. 702 and *Daubert* as set forth above.

Dated:  May 22, 2014

Respectfully submitted,

By: /s/ Cyrus A. Morton

**Robins, Kaplan, Miller & Ciresi L.L.P.**
Ronald J. Schutz  (MN Bar No. 130849)
(Eastern District of Texas Member) (Lead Counsel)
Cyrus A. Morton (MN Bar No. 287325)
(Eastern District of Texas Member)
Patrick M. Arenz (MN Bar No. 386537)
(Eastern District of Texas Member)
Annie Huang (Eastern District of Texas Member)
Daniel R. Burgess (MN Bar No. 389976)
(Eastern District of Texas Member)
Shira Shapiro (MN Bar No. 390508) *(pro hac vice)*
Kristine Tietz (MN Bar No. 393477) *(pro hac vice)*
800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota 55402
Telephone: (612) 349-8500
Fax:  (612) 339-4181
*RJSchutz@rkmc.com*
*CAMorton@rkmc.com*
*PMArenz@rkmc.com*
*AHuang@rkmc.com*
*DRBurgess@rkmc.com*
*STShapiro@rkmc.com*
*KATietz@rkmc.com*

**Germer P.L.L.C.**
Lawrence Louis Germer (TX Bar # 07824000)
Charles W. Goehringer, Jr. (TX Bar # 00793817)
550 Fannin, Suite 400
P.O. Box 4915
Beaumont, Texas 77701
Telephone: (409) 654-6700
Fax: (409) 835-2115
*llgermer@germer.com*
*cwgoehringer@germer.com*

**Attorneys for Plaintiff**
**Affinity Labs of Texas, LLC**

## <u>CERTIFICATE OF CONFERENCE</u>

The undersigned hereby certifies that counsel for Plaintiff has complied with the meet-and-confer requirement of Local Rule CV-7(h). This motion is opposed. The personal conference required by Local Rule CV-7(h) was conducted on May 21, 2014, via telephone conference.  The following counsel of record participated in the call: Kfir B. Levy and Daniel A. Noteware, Jr. for GM, Cyrus A. Morton, Daniel R. Burgess and Charles W. Goehringer, Jr. for Affinity, and Christopher C. Smith for Ford. No agreement could be reached, and discussions have conclusively ended in an impasse.

*/s/ Charlie Goehringer*

## <u>CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL</u>

The undersigned hereby certifies that Exhibits C and F, which are attached to the Declaration of Cyrus A. Morton submitted herewith, are authorized to be filed under seal pursuant to the Protective Order entered in this case.

*/s/ Charlie Goehringer*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 22, 2014, I caused a true and correct copy of this document (Affinity Labs' Motion To Strike Portions of Expert Report of Scott Andrews Regarding Invalidity) to be served on all counsel via electronic mail pursuant to Local Rule CV-5(a)(7)(C).

Dated: <u>May 22, 2014</u>                    */s/ Charlie Goehringer*